TERI T. PHAM (SBN 193383)
*tpham@enensteinlaw.com*
MATTHEW W. ROSENE (SBN 294158)
*mrosene@enensteinlaw.com*
**ENENSTEIN PHAM & GLASS**
650 Town Center Dr., Suite 840
Costa Mesa, CA 92626
Phone:  (714) 292-0262
Fax:      (714) 464-4770

Attorneys for Plaintiff StoryCorp
Consulting, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STORYCORP CONSULTING, INC.**, a Nevada corporation, dba **WELLS COMPLIANCE GROUP**,<br><br>                    Plaintiff,<br><br>        v.<br><br>**JOHN W. MARTIN**, an individual, and **DOES 1 THRU 10**, inclusive,<br><br>                    Defendants,<br><br>        and<br><br>**MOBILITYPAY HOLDINGS, INC.**, a Nevada corporation, formerly known as **CONTENT CHECKED HOLDINGS, INC.**,<br><br>                    Nominal Defendant. | **CASE NO.  2:21-cv-02891**<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR:**<br><br>1. **VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10B-5**<br>2. **VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT**<br>3. **FRAUD**<br>4. **BREACH OF FIDUCIARY DUTY**<br>5. **DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

1   Plaintiff StoryCorp Consulting hereby complains and alleges as follows:

2   ## NATURE OF THE ACTION

3   1.      Plaintiff brings this action on behalf of itself and derivatively for
4   securities fraud and related claims against the former counsel and purported
5   director and officer of a publicly traded corporation, Mobilitypay Holdings, Inc.,
6   formerly known as Content Checked Holdings, Inc. ("Content Checked").  Since
7   July 2017, defendant John W. Martin ("Martin") has held himself out to be the sole
8   Director, Chief Executive Officer, Secretary, and Chief Financial Officer of
9   Content Checked in publicly filed documents, court records, and elsewhere, and
10  has made numerous decisions on behalf of Mobility, including issuing to himself a
11  controlling interest in Content Checked under the guise of compensation for
12  services.  Plaintiff has recently learned, however, that all of Martin's actions were
13  entirely false and were part of a massive scheme to assert control over the publicly
14  traded company in order to defraud the public and the actual shareholders of
15  Content Checked for his own personal gain.  Plaintiff seeks a declaratory judgment
16  and to recover compensable damages caused by Martin's violations of the federal
17  securities laws and to pursue remedies under Sections 10(b) and 20(a) of the
18  Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5.

19  ## JURISDICTION AND VENUE

20  2.      The claims asserted herein arise under and pursuant to §§10(b) and
21  20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5
22  promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

23  3.      This Court has jurisdiction over the subject matter of this action under
24  28 U.S.C. §1331 and §27 of the Exchange Act.  This action is not a collusive
25  action to confer jurisdiction that the court would otherwise lack.

26  4.      Venue is proper in this Judicial District pursuant to §27 of the
27  Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants are
28  domiciled and conduct business in this Judicial District.

VERIFIED COMPLAINT

5.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff StoryCorp Consulting ("StoryCorp") is a corporation duly organized and existing under the laws of the State of Nevada, dba Wells Compliance Group, with its principal place of business located in Encino, California.  Plaintiff brings this action derivatively in the right and for the benefit of nominal defendant Content Checked to redress injuries suffered, and to be suffered, by Content Checked as a direct result of breaches of fiduciary duty, fraud, and violations of Securities Exchange Act of 1934 and the Rules promulgated thereunder by Martin.

7.     Plaintiff is informed and believes and thereon alleges that defendant John W. Martin was and is an individual working and residing in the County of Los Angeles.

8.     Plaintiff is informed and believes and thereon alleges that nominal defendant Mobilitypay Holdings, Inc., formerly known as Content Checked Holdings, Inc., is a corporation currently organized and existing under the laws of the State of Nevada, with its current principal place of business located at 28126 Peacock Ridge Drive, #210, in Rancho Palos Verdes, California.  At all times relevant herein, Content Checked was a publicly traded corporation with common stock traded over-the-counter under the ticker symbol "CNCK."  Content Checked is named as a nominal defendant solely in a derivative capacity.

9.     The true names and capacities, whether individual, corporate, associate, or otherwise of the defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues those defendants by such

VERIFIED COMPLAINT

fictitious names pursuant to Local Rule 19-1. Plaintiff is informed and believes and thereon alleges that each of the defendants sued herein under fictitious names is contractually, negligently, intentionally, strictly or vicariously liable and/or otherwise legally responsible for each and every act, omission, obligation, event or happening set forth in this Complaint. Plaintiff will seek leave of court to amend this Complaint to allege the true names of those DOE defendants when the same have been ascertained. The use of the term "Defendants" in any of the allegations set forth in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severally, not only named defendants, but all defendants designated as DOES 1 through 10, inclusive.

10.     Plaintiff is informed and believes and thereon alleges that at all material times herein alleged, defendants, and each of them, were the alter egos, agents, servants and/or employees of the other defendants, and each of them, and are therefore responsible in whole or in part for the damages alleged against each of the other defendants.

## FACTS COMMON TO ALL CLAIMS

11.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Content Checked was marketed and promoted as a company which purportedly develops and sells smartphone applications designed for use by those who suffer from food allergies and intolerances.

12.     Until June 2017, Content Checked's Chairman of the Board, Chief Executive Officer and President was an individual by the name of Kristian Finstad aka Hans Kristian Finstad.

13.     On or about May 2, 2014, StoryCorp entered into a written Consulting Agreement with ContentChecked, Inc. ("CCI") pursuant to which StoryCorp agreed to provide certain specified services for CCI.  In exchange for its services, StoryCorp received payment as set forth in the Consulting Agreement in the form of monetary compensation and common stock in CCI.

VERIFIED COMPLAINT

14.     In or around April 2015, CCI became a wholly-owned subsidiary of Content Checked thru a reverse merger.

15.     As part of the April 2015 merger, each share of CCI's common stock issued and outstanding as of the closing date was converted into 24 shares of common stock in Content Checked.

16.     As of the closing date of the merger, StoryCorp owned 150,000 shares of CCI's common stock.  StoryCorp thereafter received additional shares as well.

17.     Since at least 2015, there has been no meeting of the shareholders of Content Checked.

18.     Plaintiff is informed and believes and thereon alleges that in or about April 2016, Finstad appointed Dr. Göran Skog to the Board of Directors of Content Checked.  The appointment of Dr. Skog to the Board of Directors was publicly announced in press releases and filings on behalf of the company.

19.     In or around July 2016, StoryCorp and Content Checked's auditors discovered that Finstad had manipulated the finances of Content Checked and had embezzled approximately $4.9 million of monies that had been invested into the company.

20.     On or about November 29, 2016, StoryCorp terminated the Consulting Agreement.  At the time the Consulting Agreement was terminated, Content Checked owed to StoryCorp a minimum of $50,733.39, including cash and common stock, for services rendered under the Consulting Agreement.

21.     Unbeknownst to StoryCorp and any of the other shareholders, Dr. Skog thereafter resigned from the Board of Directors of Content Checked on or about December 12, 2016.  Dr. Skog's resignation was never reported on any filing with the SEC.

22.     On or about July 10, 2017, Defendant Martin filed a Form 8-K report with the US Securities Exchange Commission ("SEC") dated June 12, 2017, wherein Martin reported that "On June 12, 2017, John W. Martin was appointed as

VERIFIED COMPLAINT

President, Principal Financial Officer, Secretary and General Counsel of the Company." Martin signed the Form 8-K on behalf of Content Checked as its "President, Principal Financial Officer, Secretary and General Counsel."

23. Subsequently, a week later on July 17, 2017, Martin filed another Form 8-K with the SEC wherein he reported:

> Finstad resigned from the Board of Directors of Content Checked Holdings, Inc. (the "Company") and the Board of Directors of Content Checked, Inc., the Company's wholly-owned subsidiary ("Content Checked"). Additionally, on July 14, 2017, Mr. Finstad resigned from any and all officer positions that he held with the Company and with Content Checked, including but not limited to his positions as Chief Executive Officer, President and Chairman of the Board of the Company and Content Checked.

Martin also signed this Form 8-K on behalf of Content Checked as its "President, Principal Financial Officer, Secretary and General Counsel."

24. On or about November 22, 2017, Martin filed with the SEC a Form 3 "Initial Statement of Beneficial Ownership of Securities" identifying Content Checked as the "Reporting Person" and stating that Martin was the owner of 55,020,219 shares of the company's common stock "issued for legal services rendered and invoiced to the issuer for the period of February 21, 2017 through November 11, 2017."

25. Subsequently, on or about December 5, 2017, Martin filed a corrected Form 3, identifying himself as the Reporting Person, and stating that he was the owner of 55,023,444 shares, not 55,020,219, as previously stated.

26. On or about May 29, 2018, the SEC revoked Content Checked's registration of its securities under Section 12 of the Exchange Act.

27. On or about August 9, 2019, Martin filed a Form 10 with the SEC wherein he identified himself as the Chief Executive Officer and Chief Financial Officer of Content Checked, and he disclosed for the first time that he has been the sole director of Content Checked since July 14, 2017. Martin also claimed in that

VERIFIED COMPLAINT

document to now own 150,486,483 shares of common stock or 76% of Content Checked's outstanding shares.

28.    Plaintiff is informed and believes and thereon alleges that each of the statements made by Martin concerning his role and ownership interest in Content Checked was in fact false.  Specifically, Plaintiff is informed and believes and thereon alleges that Martin was never actually appointed as an officer or director of the company, and was never authorized to issue any shares of Content Checked's stock to himself.  Moreover, Martin was never authorized to file any documents with the SEC on behalf of Content Checked.

29.    Plaintiff is informed and believes and thereon alleges, that Martin made these false statements so that he could seize control of the company, both as its management and majority shareholder, for his own personal benefit and to the detriment of the other shareholders, including StoryCorp.

30.    In or about March 2021, Plaintiff learned for the first time that Dr. Göran Skog had resigned from the Board of Directors of Content Checked in December 2016, and never appointed Martin as an officer or director of Content Checked.  In addition, Plaintiff learned that Finstad claimed that Martin was the "person who created the problems" for Content Checked, and the only basis identified by Finstad for Martin's claims of control over Content Checked was Martin's own SEC filing.

31.    In other words, Martin usurped control over Content Checked by unilaterally designating himself as the sole director and officer and granting to himself hundreds of millions of shares of the company without any oversight or consent of any shareholders or the Board of Directors.

32.    As a direct and proximate result of Martin's wrongful acts, Plaintiff has suffered damage by, among other things, the dilution of its shares in the company and loss of value of its shares as a result of actions taken and omissions by Martin without authorization.

VERIFIED COMPLAINT

33.     Given the apparent resignations of the only previously authorized officers and directors of the company, there are no valid officers and directors to whom a demand can be made to bring this action against Defendants. Because this lawsuit seeks claims and damages against the sole purported director and officer of the company, demand would be futile.

## COUNT I

## VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT

## AND RULE 10B-5

### Against All Defendants

34.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

35.     Martin violated §10(b) of the 1934 Act and Rule 10b-5 in that from July 2017 to the present, Martin, individually and in concert with each of the other defendants, directly or indirectly, disseminated and caused to be published the false and misleading statements specified above thru the SEC and elsewhere, including but not limited to:

     a.  Omitting the fact that Dr. Skog had resigned from the Board of Directors;

     b.  Stating that Martin had been appointed as an officer and director of the company;

     c.  Stating that Martin was issued over 55 million shares of the company as compensation for legal services rendered;

     d.  Stating that Martin owned 76% of the total outstanding shares of the company.

36.     At the time Martin made the false and misleading statements, Martin knew that they were materially false and misleading; knew that such statements or documents would be issued or disseminated to the public and shareholders; and

VERIFIED COMPLAINT

knowingly and substantially participated in the preparation and dissemination of such statements or documents.

37.    In reliance upon Martin's false and misleading statements, Content Checked did issue 150,486,483 shares of common stock or 76% of Content Checked's outstanding shares to Martin.

38.    As a direct and proximate result of Martin's false and misleading statements and omissions, Plaintiff suffered damages in the dilution of the value of its shares and loss of value of its shares as a result of actions taken by Martin without authorization.

39.    As a result of the wrongful conduct alleged herein, Plaintiff has suffered damages in an amount to be established at trial, but in excess of $1,000,000, as well as treble damages as allowed by law.

## COUNT II

## VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT

### Against Martin and DOES 1-5

40.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41.    Martin participated in the operation and management of the company, and conducted and participated, directly and indirectly, in the conduct of the company's business affairs.  Because of his senior positions, Martin knew the adverse non-public information regarding the company's business practices.

42.    As an officer and purported sole director of a publicly owned company, Martin had a duty to disseminate accurate and truthful information with respect to the company's financial condition and results of operations, and to correct promptly any public statements issued by the company which had become materially false or misleading.

43.    Because of his positions of control and authority as senior officer, Martin was able to, and did, control the contents of the various reports, press

VERIFIED COMPLAINT

releases and public filings which the company disseminated in the marketplace. Martin exercised his power and authority to cause the company to engage in the wrongful acts complained of herein.  Martin therefore, was "controlling persons" of the company within the meaning of Section 20(a) of the Exchange Act.  In this capacity, Martin participated in the unlawful conduct alleged which artificially inflated the market price of the company's securities.

44.  Martin, therefore, acted as a controlling person of the company.  By reason of his senior management positions and being the purported sole director of the company, Martin had the power to direct the actions of, and exercised the same to cause, the company to engage in the unlawful acts and conduct complained of herein.  Martin exercised control over the general operations of the company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff complains.

45.  By reason of the above conduct, Martin is liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the company.

46.  As a result of the wrongful conduct alleged herein, Plaintiff has suffered damages in an amount to be established at trial, but in excess of $1,000,000, as well as treble damages as allowed by law.

## COUNT III

### FRAUD

### Against All Defendants

47.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.  From July 2017 to the present, Defendants individually and in concert with each of the other defendants, directly or indirectly, disseminated and caused to be published the false and misleading statements specified above, including but not limited to:

VERIFIED COMPLAINT

a. Omitting the fact that Dr. Skog had resigned from the Board of Directors;

b. Stating that Martin had been appointed as an officer and director of the company;

c. Stating that Martin was issued over 55 million shares of the company as compensation for legal services rendered;

d. Stating that Martin owned 76% of the total outstanding shares of the company.

49.     At the time Defendants made the false and misleading statements, Defendants knew that they were materially false and misleading; knew that such statements or documents would be issued or disseminated to the public and shareholders; and knowingly and substantially participated in the preparation and dissemination of such statements or documents.

50.     In reliance upon Defendants' false and misleading statements, Content Checked did issue 150,486,483 shares of common stock or 76% of Content Checked's outstanding shares to Martin.

51.     As a direct and proximate result of Martin's false and misleading statements and omissions, Plaintiff suffered damages in the dilution of the value of its shares and loss of value of its shares as a result of actions taken by Defendants without authorization.

52.     As a result of the wrongful conduct alleged herein, Plaintiff has suffered damages in an amount to be established at trial, but in excess of $1,000,000.

53.     Defendants' wrongful conduct as alleged herein was willful, malicious, fraudulent and in conscious disregard of Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages against the Defendants.

///
///

VERIFIED COMPLAINT

## COUNT IV

### BREACH OF FIDUCIARY DUTY

### Against Martin and Does 6-10

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     From July 2017 to the present, Defendant purported to act as an officer, director and controlling shareholder of Content Checked.

56.     By virtue of his actions and positions, Defendant owed a fiduciary duty of loyalty and care to Content Checked and the minority shareholders, including Plaintiff.

57.     Defendant breached his fiduciary duty to the Plaintiff by, among other things, filing and publishing false and materially misleading information with the SEC and elsewhere as alleged above and issuing to himself hundreds of millions in shares of the company without adequate consideration.

58.     As a direct and proximate result of Martin's false and misleading statements and omissions, Plaintiff suffered damages in the dilution of the value of its shares and loss of value of its shares as a result of actions taken by Martin without authorization.

59.     As a result of the wrongful conduct alleged herein, Plaintiff has suffered damages in an amount to be established at trial, but in excess of $1,000,000.

60.     Defendants' wrongful conduct as alleged herein was willful, malicious, fraudulent and in conscious disregard of Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages against the Defendants.

///

///

///

///

VERIFIED COMPLAINT

## COUNT V

## DECLARATORY RELIEF

### Against all Defendants

61.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

62.     Plaintiff is informed and believes and thereon alleges that an actual case or controversy now exists in that Defendant contends that he is the sole officer and director of Content Checked although there has been no actual authorized appointment of Defendant as an officer or director of the company.

63.     A judicial declaration is necessary to establish the rights and interests of the parties in Content Checked.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     For compensatory damages in an amount to be determined at trial, but in excess of $1,000,000, as well as treble damages as applicable;

B.     For punitive damages in an amount to be determined at trial;

C.     For prejudgment and post-judgment interest;

D.     For a declaration of the rights and interest of the parties in Content Checked;

E.     For such other and further relief as this Court may deem just and proper.

Dated: April 2, 2021

**ENENSTEIN PHAM & GLASS**

By:

Teri T. Pham
Matthew W. Rosene
Attorneys for Plaintiff

VERIFIED COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2

Plaintiff hereby demands a trial by jury of all claims triable before a jury.

3

4    Dated: April 2, 2021                 **ENENSTEIN PHAM & GLASS**

5                                  By: _____

6                                      Teri T. Pham

7                                      Matthew W. Rosene

                                       Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT

## **VERIFICATION**

I, David Wells, hereby declare as follows:

I am the Chief Executive Officer, President, and sole shareholder of StoryCorp Consulting, Inc., a Nevada corporation doing business as Wells Compliance Group ("StoryCorp") and the named Plaintiff to this action. StoryCorp was a shareholder at the time of the wrongdoing complained of and remains a shareholder. StoryCorp has retained competent counsel and is ready, willing, and able to pursue this action vigorously on behalf of MobilityPay Holdings, Inc. I have reviewed the Verified Shareholder Derivative Complaint. Based upon discussions with and reliance upon counsel, and as to those facts of which I have personal knowledge, the Verified Shareholder Derivative Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

_____
David Wells, for StoryCorp
Consulting, Inc.